**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. No. 06-109T** |
| | ) | |
| **FERNEL ANTONIO TORRES GRANADOS** | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorneys, Robert C. Corrente, United States Attorney, and Sandra R. Beckner, Assistant United States Attorney, responds to Defendant's Motion to Dismiss as follows:

**INTRODUCTION**

Pursuant to Fed.R.Cr.P. 12(b)(2), the defendant moves to dismiss the indictment in the above-captioned case arguing that he obtained derivative citizenship through his mother in 1997, thus precluding the government from proving that he was an alien at the time he illegally entered the United States. The defendant's claim is without merit.

**FACTS**

The parties agree that an evidentiary hearing is not needed to resolve the pending motion to dismiss. The parties agree to the following pertinent facts:

1. The defendant was born on January 3, 1980 in El Salvador to Fernel A. Torres and Maria Granados, both of whom were citizens of El Salvador at the time of the defendant's birth.

2. The defendant became a lawful permanent resident of the United States on February 27, 1992.

3. The defendant's father was incarcerated at the Adult Correctional Institution in Cranston, Rhode Island, from January 16, 1996 until April 13, 1999, at which time he was released to Immigration and Naturalization Service (INS) for deportation proceedings.

4. On August 4, 1997, when the defendant was 17 years old, the defendant's mother, Maria Granados, became a naturalized citizen of the United States. The defendant maintains that he was living with his mother at 650 Chalkstone Avenue, Providence, Rhode Island at the time his mother became a naturalized citizen of the United States.[1]

5. On March 24, 1999, after being criminally convicted of Domestic Assault and Possession of a Stolen Motor Vehicle, the defendant had a deportation hearing in front of an immigration judge (IJ). During that hearing, the IJ raised the issue of derivative citizenship. Specifically, the IJ asked the defendant if either of his parents were citizens and whether they were still married. Upon being informed that the defendant's parents were still married, the IJ decided that there were no issues of derivative citizenship. The IJ did not ask the defendant if his

[1] The government does not have any information to dispute the fact that the defendant was living with his mother on August 4, 1997, and will stipulate to that fact for purposes of the motion.

parents were legally separated, or make inquiry as to which parent had legal custody. The defendant did not have an attorney at this hearing.

6. On April 23, 1999, the IJ signed a deportation order for the defendant, who was then deported on June 12, 1999.

7. A final judgment of divorce was entered by the Rhode Island Family Court Justice on May 3, 1999. Other than the divorce complaint and accompanying documents which were filed on November 5, 1998, there were no separation documents or other filings pertaining to the dissolution of the defendant's parents' marriage.

**RULE 12(b)(2)**

In a prosecution for illegal re-entry in violation of 8 U.S.C. § 1326, "[b]ecause derivative citizenship would negate [the element of alienage], [the defendant] must be allowed to present that defense to the jury." United States v. Smith-Balthier, 424 F.3d 913, 922 (9th Cir. 2005). That is, evidence of derivative citizenship constitutes a defense to the crime of illegal re-entry. See id. at 923 (finding the district court erred when it refused to allow the defendant to present a defense of derivative citizenship).

Pursuant to Fed.R.Cr.P. 12(b)(2), a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." In this

case, the defendant moves to dismiss the indictment because he claims derivative citizenship. The facts in this case are undisputed, and the defendant's motion should be dispositive of this case. Counsel for the defendant has represented that if defense loses the motion, then the defendant will plead guilty. Should the Court rule in the defendant's favor, then the indictment will be dismissed.

**ARGUMENT**

The statute governing the issue of the defendant's eligibility for derivative citizenship that was in effect at the time of the defendant's 18th birthday was 8 U.S.C. § 1432(a) (1999) (repealed 2000). That statute granted derivative citizenship to:

> child[ren] born outside of the United States [to] alien parents . . . upon fulfillment of[, inter alia,] the following conditions: . . .
>
> (3) The naturalization of *the* parent having legal custody of the child when there has been a legal separation of the parents . . . ; and if
>
> (4) [s]uch naturalization takes place while such child is under the age of eighteen years; and
>
> (5) [s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the custodial parent's naturalization.

Bustamante-Barrera v. Gonzales, 447 F.3d 388, 395 (5th Cir. 2006) (quoting 8 U.S.C. § 1432(a)(3)-(5) (emphasis added)).

In the case at hand, the defendant fails to satisfy the

requirements of § 1432(a) because his parents were not legally separated, within the meaning of the statute, until after the defendant's 18th birthday[2]. "[L]egal separation" as used in § 1432(a)(3) is a question of federal law. See Afeta v. Gonzales, 467 F.3d 402, 405 (4th Cir. 2006); Nehme v. INS, 252 F.3d 415, 425-26 (5th Cir. 2001)[3]; see, e.g., Fierro v. Reno, 217 F.3d 1, 3-4 (1st Cir. 2000) ("What is meant by the phrase 'having legal custody of the child' [in § 1432] is, of course, a question of federal statutory interpretation.")[4].

---

[2] The government will not dispute that the defendant's mother had actual custody of the defendant at the time of her naturalization, although whether actual custody equates to "legal custody" within the meaning of the statute is not altogether clear. But see Bagot v. Ashcroft, 398 F.3d 252, 266 (3rd Cir. 2005) (actual uncontested custody amounts to "legal custody" within the meaning of § 1432(a)).

[3] In formulating a federal standard by which to interpret the term "legal separation," the Fifth Circuit recognized that its formulation "may also be informed by state law. . . ." Nehme, 252 F.3d at 426. The Fifth Circuit identified four states which had a statutory definition for the term "legal separation" and noted that in each of those four states, the term required a "judicial sanction." Id. The court then identified eighteen other states, which did not include Rhode Island, that had a statutory mechanism called "legal separation," and determined that in those states "legal separation" contemplated a judicial decree. Id. From that, the Fifth Circuit concluded "that in the United States, the term 'legal separation' is uniformly understood to mean judicial separation." Id. "This is so even though not every state provides for legal separation." Id.

[4] The First Circuit in Fierro refused to decide the meaning of "legal custody" for purposes of § 1432 on state law grounds, "resting instead on a strictly federal ground." Fierro, 217 F.3d at 6. Despite a subsequent, retroactive modification of the state court custody decree via a nunc pro tunc order, the First Circuit determined that under Massachusetts law, the defendant

Although not specifically addressed by the First Circuit, other circuits have concluded that a "legal separation" occurs only when "there has been a formal, judicial alteration of the marital relationship." Afeta, 467 F.3d at 406 (quoting Nehme, 252 F.3d at 425-26); see also Brissett v. Ashcroft, 363 F.3d 130, 132-33 (2d Cir. 2004); Simpson v. T.D. Williamson Inc., 414 F.3d 1203, 1206 (10th Cir. 2005) (relying upon Nehme, the Tenth Circuit defined a "legal separation" within the meaning of COBRA as occurring "only upon entry of a final court decree adjudicating the parties legal rights and obligations but preserving the marriage bond.").

To determine whether there has been a formal, judicial alteration of the marital relationship, the Court should consider the orders issued in the state or nation having jurisdiction over the marriage. See Afeta, 467 F.3d 407-08 (looking at Maryland divorce law to see what if any impact Maryland law had on the application of § 1432(a) to the facts of the case); see also Batista v. Ashcroft, 270 F.3d 8, 15-16 (1st Cir. 2001) (finding that a Dominican divorce decree created an issue of fact with respect to whether or not petitioner's parents were legally separated).

In Afeta, 467 F.3d at 403-07, a case similar to the one at

---

was in the legal custody of the non-naturalized parent during the relevant time period, and thus not entitled to assert a claim of derivative citizenship. See id.

hand, the Fourth Circuit affirmed the Bureau of Immigration Appeal's (BIA) denial of Afeta's claim for derivative citizenship, even though his parents had been living apart for seven years when Afeta's mother was naturalized. Afeta's parents had also signed a voluntary separation agreement at the time of separation, but because that agreement was not a "formal judicial document," it did not constitute a "legal separation" for purposes of § 1432(a). Id. at 405.

Likewise, in Nehme, 252 F.3d at 426-27, the Fifth Circuit concluded that Nehme did not obtain derivative citizenship through his father because his parents were not "legally separated," that is, separated pursuant to a "judicial alteration" of the marriage. The court reached this conclusion despite the fact that his parents were physically separated. Id. at 419 ("[T]he fact that legal separation was no longer possible in Pennsylvania . . . does not end the inquiry, because we have rejected the proposition that the law of any one state should be controlling in this case."); but see Minasyan v. Gonzalez, 401 F.3d 1069, 1078 (9th Cir. 2005)[5].

---

[5] In Minasyan, 401 F.3d at 1076, the Ninth Circuit determined that the term "legal separation" was a question of federal statutory interpretation, and that "legal separation" meant a "separation recognized by law." Since there is no federal law of domestic relations, the court held "that necessarily means a separation recognized by state law." Id. The Ninth Circuit found that petitioner Minasyan was entitled to derivative citizenship because under California law his parents were "legally separated." Id. at 1078 ("California case law

In Brissett, 363 F.3d at 132, the Second Circuit held that petitioner failed to establish that he was entitled to derivative citizenship despite the fact that his parents began living apart in 1972 when he was eleven, the Family Court for the State of New York ordered petitioner's father to pay child support in 1972, and the Family Court issued two temporary orders of protection against petitioner's father. The Second Circuit concluded "that these facts [were not sufficient] to establish that his parents were legally separated within the meaning of § 1432(a)(3) at the time of his mother's naturalization." Id. The court later stated, "the structure of § 1432 indicates that Congress intended that the children of informally separated parents be treated like the children of married parents." Id. at 134.

In the case at hand, defendant argues that his parents were legally separated at the time of his mother's naturalization. In support of this contention, the defendant points to his father's 1996 incarceration and to the May 3, 1999 divorce decree in which the family court justice found that the defendant's parents

---

recognizes that spouses are separated for legal purposes beginning on a court defined 'date of separation.' . . . That form of legal separation occurs under California law when the spouses 'have come to a parting of the ways with no present intention of resuming marital relations.'"). The court reached this conclusion in part because the divorce decree declared that petitioner's parents were separated prior to his 18th birthday, thus "acknowledg[ing] a separation that was actually in effect both in practice and as a matter of California law. . . ." Id. at 1080 n.20.

"separated in November of 1995." Thus, the defendant argues that because his parents were physically separated for three years, and because the Family Court subsequently acknowledged that fact in the divorce decree, his parents were legally separated[6]. These facts, however, do not establish a legal separation within the meaning of § 1432(a)(3).

There was no formal, judicial alteration of his parents' marriage at the time of the defendant's mother's naturalization, and prior to defendant's 18th birthday. Other than the 1998 divorce complaint and the 1999 decree, there were no other court filings affecting the defendant's parents' marriage. That is, the sole judicial pronouncement on the defendant's parents' marriage occurred on May 3, 1999, when his parents' marriage was dissolved - long after the defendant's mother naturalized and he turned 18.

In Rhode Island there are two methods of altering or dissolving the marriage relationship: an absolute divorce or a bed-and-board divorce. See Rhode Island General Laws 1956, §§ 15-5-1, 15-5-2, 15-5-3, 15-5-3.1 and 15-5-9; see generally Henderson v. Henderson, 818 A.2d 669, 672-73 (R.I. 2003) (explaining a limited divorce or legal separation under Rhode

---

[6] Contrary to the defendant's contention, the defendant's parents' divorce was granted on the grounds that there were "irreconcilable differences" between the parties, not on the grounds of physical separation. See Final Judgment of Divorce, para. 2.

Island law); Hamel v. Hamel, 426 A.2d 259, 262 (R.I. 1981). "A bed-and-board divorce is sometimes referred to as a legal separation." See Hamel, 426 A.2d at 260 n.1. Neither occurred in this case prior to the defendant's 18th birthday. See Brissett, 363 F.3d at 134 (requiring a formal act by the parties which, under the laws of the state or nation having jurisdiction of the marriage, alters the marital relationship).

Whether the Court adheres to the standard pronounced by the Fifth Circuit in Nehme or the slightly broader standard described by the Second Circuit in Brissett, see generally, Afeta, 467 F.3d 406-07 (comparing Nehme and Brissett), the outcome is the same - there was no formal alteration of the defendant's parents' marriage prior to the 1999 divorce decree. The defendant's argument that his father was arrested in 1995, and thereby legally separated from the defendant's mother, does not satisfy Brissett or Nehme. To hold otherwise, would be to proclaim that every time an individual is in jail, whether for an arrest or to serve a sentence, his or her marital status is legally altered despite no action by the parties to the marriage.

Moreover, the Court should place no significance on the finding in the divorce decree that the parties were separated in November 1995. As pointed out by defense, Rhode Island law recognizes that married individuals who have lived apart for three years, voluntarily or involuntarily, may seek an absolute

divorce. See Rhode Island General Laws, § 15-5-3. The fact that physical separation may later form the basis of a divorce in Rhode Island does not mean that a divorce decree retroactively transforms physical separation into a legal separation.

## CONCLUSION

For all the foregoing reasons, the Court should deny the defendant's motion to dismiss the indictment.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2007, a copy of the within "Government's Response to Defendant's Motion to Dismiss" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Ms. Mary McElroy
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj